WILLIAM H. SNOW v. WEBSTER T. SMITH ET AL.

Special Term at Rutland, November, 1911.

Present: MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 20, 1912.

*Landlord and Tenant—Trade Fixtures—Tenant's Right to Remove.*

Buildings and machinery, placed on rented premises for the purpose of advancing the business for which the premises were leased, are trade fixtures and removable by the tenant within the term; and the size, quality, and character of the building, and the manner of its attachment, are of consequence only as evidence of the purpose of its erection.

Where a lease of land gave the lessee the right to take and remove minerals therefrom, and thereon he erected buildings wherein he placed machinery for the purpose of doing the mining, and the buildings and machinery were fit for no other purpose, and could be removed without injury to themselves or the freehold, they were trade fixtures, and removable by the tenant within the term.

Where buildings, erected by a lessee on land rented for mining, are trade fixtures, and the lease has no provision that at its expiration shafts should be covered, the buildings may be removed by the lessee within the term, although such removal would leave a shaft uncovered.

There is no landlord's lien in this State, and so a lessor cannot prevent the removal of trade fixtures on the ground that thereby he will be deprived of the means of collecting the rent.

Since equitable liens are founded on contracts relating to specific property, or on protection against fraud, where a mining lease for fifty years does not provide that the buildings or machinery placed on the land by the lessee shall be subject to any lien in favor of the lessor, and, long before the expiration of the term, the lessee abandoned the mining and attempted to remove such buildings and machinery, which were trade fixtures, the lessor could not prevent the removal on the ground that he had an equitable lien on the buildings and machinery for future rent.

APPEAL IN CHANCERY. Heard on the pleadings and master's report at the June Term, 1911, Bennington County, *Taylor,* Chancellor. Decree dismissing the bill with costs. The orator appealed. The opinion states the case.

*Charles A. Maurer* and *J. K. Batchelder* for the orator.

The lessor has the right to have the building in question left to cover the shaft over which it was erected; as a tenant cannot remove trade fixtures when thereby the premises would be injured, or left in a worse condition than when he took possession. *Cooper* v. *Peckham,* 35 Conn. 88; *Smith* v. *Bank,* 202 Mass. 482; *Thomas* v. *Goyle & Co.,* 120 S. W. 290; *Bedlow* v. *N. Y. Dock Co.,* 112 N. Y. 286; *Wall et al.* v. *Hurds,* 70 Mass. 256; *Lawton* v. *Lawton,* 4 Atk. 15; 2 Smith's Leading Cases, 241; *Gurthrie* v. *Jones,* 108 Mass. 191; *Freelander* v. *Hewitt,* 30 Neb. 787; *Elwes* v. *Mawe,* 3 East. 38; *Hanrahan* v. *O'Reilly,* 102 Mass. 201; *Murray* v. *Morose,* 27 Mich. 203; *Collamon* v. *Gillis,* 149 Mass. 578; *Freelander* v. *Ryder,* 47 N. W. 83, 9 L. R. A. 700; *Whitney* v. *Brastwo,* 4 Pick. 311.

*Bennett & Graves* and *D. A. Guiltinan* for the defendants.

POWERS, J. In the fall of 1904, the orator leased to Harry T. Cushman for term of fifty years a part of the pasture on his farm in Bennington. The lease was in writing, and, among other things, provided that the lessee might take and remove all ores and minerals lying in or upon the premises; that he might erect such buildings as might be necessary for the proper conduct of the business; that he should pay a certain rent as therein specified, and, after the first year, a certain sum per ton for all ore taken in excess of 150 tons; that he should deliver up the possession at the expiration of the term "without let or hindrance," and that, in case he should, for a period of thirty days fail to perform any of his agreements as contained in the lease, the orator might forthwith "reenter upon and repossess the premises."

Cushman took possession under the lease and erected the buildings and installed the machinery, the removal of which the orator seeks by these proceedings to restrain. A shaft was sunk some thirty-seven feet, and from this, at various depths, drifts

were extended in different directions. One of the buildings stands over this shaft, and it is in this building that the machinery is installed. The buildings are cheap, wooden structures, and they and the machinery were designed solely for mining purposes and are of little value for other purposes. All the machinery except a dryer can be removed without injury to itself or the building, and the buildings can be removed without material injury either to themselves or to the land.

The defendants have succeeded to Cushman's rights under the lease. The orator says, and his statement is not disputed—though the master's report does not show it—that one installment of rent was due when this suit was begun, but it was not thirty days' overdue when it was paid by the solicitor for the defendants, and no reentry was attempted. When this suit was brought and the temporary injunction issued, the defendants were engaged in the removal of the buildings and machinery, and they admit that they do not intend to continue mining operations on the premises.

Since these buildings and the machinery therein were placed upon the rented premises to advance the business for which the premises were leased, they must be held to be trade fixtures, and so removable by the tenant within the term. *Updegraff* v. *Lesem,* 15 Col. App. 297, 62 Pac. 342; *Conrad* v. *Saginaw Mining Co.,* 54 Mich. 249, 20 N. W. 39, 52 Am. Rep. 817. It was said in *Wagner* v. *C. & T. R. Co.,* 22 Oh. St. 563, 10 Am. Rep. 770, that the general principle involved in a determination of such questions, is the distinction between the business which is carried on in or upon the premises and the premises themselves. That the former is personal in its nature, and articles that are merely accessory to the business and have been put on the premises for this purpose, retain the personal character of the principal, to which they are subservient. But articles which have been annexed to the premises as accessory to the land, without regard to the business there carried on, become subservient to the realty, and acquire its character.

A leading case upon this subject is *Van Ness* v. *Pacard,* 2 Pet. 137, 7 L. ed. 374. It is held therein that the question of the removability of fixtures erected by a tenant depends solely upon whether they were designed for the purposes of trade or not. This being so, the size, quality and character of a building, and the manner in which it is attached to the realty are of little or

no consequence, except as evidence bearing upon the purpose of its erection.

That this property, both buildings and machinery, are trade fixtures, is, in effect conceded by the orator. He denies, however, that they can be removed by the tenant, and bases his denial on two grounds:

First, because he would suffer great and disproportionate damage from the removal of the building over the shaft, since his cattle would be exposed to the dangers incident to the hole thereby left unguarded.

Second, because he would be left without any security for the rent as it accrues in the future, and that he therefore ought to be decreed to have an equitable lien on the property.

The orator's first claim takes no note of the finding of the master that the buildings can be removed without material injury to the real estate. And we cannot say that this is not so, for the open shaft and its dangers are only the indirect result of the removal of the building. The removal itself cannot injure the land. The condition thereby exposed can be easily guarded against as shown by the report. These came from a legitimate use of the demised premises, both as to the sinking of the shaft and the removal of its covering erected by the orator's express permission, and if the orator had wished to avoid this result, he should have stipulated against it in the lease.

The orator's other claim is equally unsustainable. It may or may not be true that he will be unable to collect his rent in the future. The report does not show. It is not quite fair to say, as the orator does, that the defendants have abandoned the premises. They have stopped mining thereon, and that permanently, but there is no finding that they intend to abandon their rights. At any rate, we can establish no lien here, for neither the law nor the contract provides for one. We have no landlord's lien in this State. Equitable liens are recognized, but these, says Mr. Pomeroy, have their foundation "in contracts, express or implied, which deal with, or in some manner relate, to specific property, such as a tract of land, particular chattels or securities, a certain fund, or the like," 3 Pom. Eq., §1235. Here the buildings and machinery were not the subject matter of any contract express or implied.

Again, in *Green* v. *McDonald*, 75 Vt. 93, 53 Atl. 332, it was said that to raise an equitable lien, the aid of a court of equity

must be requisite to the owner of the property on which an equitable lien is sought, so that he may be compelled to do equity, or there must be some element of fraud in the matter as a ground of equitable relief. Here, the owner is not seeking the aid of the court of equity, nor can it be charged that he has been guilty of anything resembling fraud toward the orator.

*Affirmed and remanded.*