Hart, J.
The auditor claims error in this case because the Board of Tax Appeals reduced the valuation of the land in question i-n the sum of $139,930, and the valuation of certain structures, aside from the question of their classification as realty or personalty, in a further sum. These reductions were evidently based on a difference in the appraisal of the property by witnesses who testified before the Board of Tax Appeals. This presents, not a question of law, but an issue of fact for the decision of the board, and this court cannot say that the finding of the board as to such items of valuation is unlawful or unreasonable. The contention of the auditor as to this ground of error is therefore overruled.
The only, question remaining to be determined is whether the decision of the Board of Tax Appeals, to ■the effect that large portions of the equipment and machinery located on the lands of Standard Oil and used by it in the process of refining, are not fixtures and therefore not improvements on the land, but personal property assessable as such for taxation, was unreasonable or unlawful.
Whether property was classified for taxation purposes either as land and improvements thereon, or as *512 personal property, was immaterial and of no consequence prior to 1931, because under Section 2, Article XII of the Constitution, all property was then taxed at a uniform rate and at its true value in money. However, in 1931, that section of the Constitution was amended so as to provide that lands and improvements thereon shall be taxed by uniform rule according to value. By that amendment the former limitation of uniformity, as applied to the taxation of personal property, was removed. The General Assembly, pursuant to this constitutional amendment, in the same year adopted, a classified property tax law including therein Section 5388, General Code (115 Ohio Laws, 564), which provides that, excepting as otherwise provided, personal property shall be listed and assessed at 70 per cent of the true value thereof in money. One of the exceptions to the general personal property classification for tax purposes above noted is that all engines, machinery, tools and implements of a manufacturer, of every kind and description, used or designed to be used in refining or manufacturing, except such as are legally regarded as improvements on land and so considered in arriving at the value of real property assessed for taxation, and except such as are used for the generation or distribution of electricity other than for the use of the person generating or distributing the same, shall be listed and assessed for taxation at 50 per cent of the true value thereof in money. See, also, Section 5386, General Code. The net result of this legislation is that engines, machinery, tools and implements, to be entitled to be listed for taxation at 50 per cent of their value, must be personal property.
It must be apparent that in the adoption of this legislation it was the purpose and intent of the General Assembly to give such manufacturers and refiners, and certain other classes of taxpayers, a tax advantage as *513 to certain of their personal property not enjoyed by taxpayers generally, to the end that this preferential treatment would result in the production by such preferred taxpayers of a greater volume of property which, in turn, would become subject to taxation. While the purpose and effect of this legislation are not controlling, they should be given consideration and such weight as they deserve in approaching the problem now before the court.
It is the claim of the auditor that the machinery and equipment in question are annexed to the land in such manner as to become a part of it and therefore must be regarded as improvements on the land and be taxed as such under the uniform rule applicable to land.
On the other hand, Standard Oil claims that the constitutional provision that “land and improvements thereon shall be taxed by uniform rule according to value” does not-apply to the taxation of the machinery, tanks, pipes and equipment which it owns and uses in refining, if they are so affixed to the land as to be removable without injury to the land or to such equipment ; that its refining machinery and equipment serve a special purpose and are not so adapted to the use of the land as to be appropriate, usable or necessary in the enjoyment of the land if and when it is devoted to any other normal use and are, therefore, personal arid not real property; and that such property is of such character and classification to wit, machinery used in manufacturing and refining, as to give it a preferential tax status under the laws of this state and assessable at 50 per cent of its true value.
Both parties rely on the legal doctrines announced in the century old, leading and universally approved ease of Teaff v. Hewitt, 1 Ohio St., 511, 59 Am. Dec., 634, as supporting their respective contentions. In deciding the instant case, this court may rely for-author *514 ity on the case of Teaff v. Hewitt, supra, and the subsequent cognate cases decided by this court, in which the rules of law laid down by the court in that leading case have been consistently followed. The only controversy between the parties in this case arises in the application of the principles of that case to the facts in the instant case as presented by the record.
The case of Teaff v. Hewitt, supra, adopted the combined application of three requisites as the criterion of a fixture: (1) Actual annexation to the realty or something appurtenant thereto; (2) appropriation to the use or purpose of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold. That criterion will now be applied to the machinery and equipment under consideration in determining whether they are or are not fixtures and consequently whether they are or are not real property.
To determine the degree of annexation which will convert what was once a chattel into part and parcel of the real property to which it is attached, is a matter of much difficulty. Without discussing particular cases, the weight of authority seems to be that, while slight attachment to realty may be sufficient to give a chattel the character of a fixture, provided the other requisites-of a fixture are present, as a general rule to give it such character it must be so attached that it loses its identity as a chattel or'that it cannot be removed without injury to. itself or to the freehold, apart from, the reduced value.of the freehold due to the abstraction of the thing removed. This requisite of the test does not furnish an exclusive criterion because some chattels, even though slightly attached to the realty and removable without 'injury to the realty or to the chattels themselves, are so definitely appropriated to and so necessary to the enjoyment of the realty to which *515 they are attached that they must be regarded as fixtures. Teaff v. Hewitt, supra, pages 527, 528.
The record here under consideration discloses that while some of the machinery and equipment under consideration in this case are ponderous and rest upon heavy concrete foundations and are held in place by means of heavy bolts, all may be taken apart, dismantled, removed and reassembled without injury to such machinery and equipment and without injury to the realty upon which they are located. Although the test of attachment of this property to the real estate is not conclusive as to whether it is a fixture, the presumption is, since it was once a chattel, that it remains a chattel unless the contrary is shown.
, The second requisite of the test of a fixture is that the annexed chattel must have such relationship to the land or improvements already constructed thereon as to b.e necessary or beneficial to its enjoyment, independent of the business presently carried on. To illustrate, a silo constructed on a farm is a fixture (Concrete Silo Co. v. Warstler, 50 Ohio App., 334, 198 N. E., 189); a heating furnace installed in a residence property is a fixture (Holland Furnace Co. v. Trumbull Savings & Loan Co., 135 Ohio St., 48, 19 N. E. [2d], 273); and motive-power equipment in a mill is likewise a fixture (Teaff v. Hewitt, supra). Those are fixtures because they would be beneficial, if not necessary, to the use of the land and the structures already. placed thereon regardless of the nature of the business which might be located on such land.
For the purposes of classification of annexed property as realty or personalty, the Ohio cases, herein cited, have clearly drawn a fundamental distinction between annexations which would be integrated with and of permanent benefit to the land regardless of its future use, such as a heating furnace, motive-power *516 machinery, water systems, drainage and sewer systems, accessory to the land and not to the business carried on; and annexations of special-purpose, manufacturing or processing machinery and structures which could be used only in a particular business or industry and not in any normal use to which the land might be devoted, and hence accessory to the business in which they function and not accessory to the land. The decisive test of appropriation is whether the chattel under consideration in any case is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted. 36 Corpus Juris Secundun, 912 to 914, Sections 8 to 10.
In the case of Snow v. Smith, 86 Vt., 58, 83 A., 269, it was held that where a lease of land for a term of 50 years gave the lessee a right to take and remove minerals, and he erected buildings wherein lie placed heavy machinery for the purpose of doing the mining, which buildings and machinery were fit for no other purpose and could be removed without injury to themselves or to the freehold, such buildings and machinery were personal property and removable by the tenant, within the term. A good illustration of appropriation and lack of appropriation to real estate, of chattels identical in character, is- shown in the two cases of M. P. Moller, Inc., v. Wilson, 8 Cal. (2d), 31, 63 P. (2d), 818, and Rogers v. Crow, 40 Mo., 91, 93 Am. Dec., 299. In the former a pipe organ installed in a residence was held to remain personal property, while in the latter a pipe organ installed in a church was held to be a part of the church building and therefore real estate.
The doctrine of appropriation to use has become firmly settled in the law of this state. In the case of Wagner v. Cleveland & Toledo Rd. Co., 22 Ohio St., 563, 10 Am. Rep., 770, it was held that stone piers built *517 by a railroad company as part of its railroad, did not, although firmly imbedded in the earth, become the ’property of the owner of lands over which the railroad company had a right of way; and that when the railroad was abandoned, the company might remove such structures as personal property. The court pointed out that the general principle involved in the determination of that question was the distinction between the business which was carried on in or upon the premises, and the premises themselves; that the former was personal in its nature, and that articles used or merely accessory to the business, which had been put on the premises for such purpose, retained the personal character of the principal to which they were subservient. But articles which had been annexed to the premises as accessory to the land, without regard to the business there carried on, became subservient to the realty and acquired its character.
In the case of Fortman v. Goepper, 14 Ohio St., 558, 567, involving the removability of a large brewing kettle claimed by its owner to be personal property, the court said:
“The general principle to be kept in view, underlying all questions of this kind, is the distinction between the business which is carried on in or upon the premises, and the premises, or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character. ’ ’
*518 In the case of Case Manufacturing Co. v. Garven, 45 Ohio St., 289, 300, 13 N. E., 493, machinery, other than motive power in character, nsecl in a mill for the manufacture of flour and fastened to the floor by bolts, but readily removable without injury, was held to be personalty. In so holding, the court said:
“ ? * * the machinery that is propelled, has more of the general character of personalty, is not as a rule so closely annexed to the freehold, and may be removed, and frequently is, from one mill to another, as any other article of personalty; and is more properly ‘accessory to the business’ carried on upon the realty than to the realty itself.”
The third concurrent requisite of a fixture is an intention upon the part of the annexer to make the chattel annexed a permanent accession to the freehold. The legal intention to permanently annex is not the subjective or secret purpose of the annexer. It is the intention which the annexer has made perceptible either by express declaration or by so dealing with the annexed property that his intention may be inferred from those circumstances. Intention to permanently attach must be inferred from all the surrounding circumstances which can be objectively observed.
There is a presumption against an intention to annex and make a chattel realty. In Teaff v. Hewitt, supra, the court said:
“Inasmuch as it requires a positive act on the part of the person making the annexation, to change the nature and legal qualities of a chattel into those of a fixture, the intention to máke the article a permanent accession to the realty, must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel.”
Whether in a given case, property attached to a *519 building upon real estate should be deemed to be a part of the real estate is, in the last analysis, a question of intention to be inferred or implied from all the surrounding circumstances. Fehleisen v. Quinn, Reer., 182 Ia., 1283, 165 N. W., 213; 36 Corpus Juris Secundum, 894, Section 2.
The intention of the annexer must be determined from the nature of the article affixed; the relation and situation of the party making the annexation; the structure and mode of annexation; the purpose or use for which the annexation lias been made, taking into consideration whether it was made with a view of permanence or with a view of serving a special purpose or business; the economic advantage, if any, of treating the annexed property as real or personal; the relationship between the parties interested in the land and chattel and the resulting equities arising from such relationship; and contracts or agreements between those having ownership of or equitable interests in the chattel, tending constructively to annex such chattel to or to sever it from real estate.
Intention to render a chattel a fixture is not the mere determination to annex the chattel to the realty, but the determination to devote the chattel to the use and service of the land or structure already a part of the land, in such manner as to enhance the serviceability of the whole as a permanent unit of property to whatsoever use it may be devoted.
The question here is not complicated by the conflicting interests of lienholders or those holding equitable rights or 'estates in the property. The instant case involves the question as to what is personalty and what is real estate in property wholly owned by a taxpayer who, for the assessment of taxes, is entitled to the most liberal interpretation in his favor of the facts which determine and fix the taxability of his property. See *520 In re Bronxville Bowling Club, Inc., 289 N. Y., 666, 45 N. E. (2d), 171 (fourteen bowling alleys installed in a one-story building were held personal property for taxation purposes); National Exhibition Co. v. Miller, 288 N. Y., 698, 43 N. E. (2d), 88 (grandstand and seats at polo grounds, New York, were held personal property for taxation purposes).
In arriving at the presumed intention of the owner of ■ land with reference to the permanence with which he annexes a chattel thereto, the court may take into consideration the tax advantage which automatically accrues to him by keeping the chattel as such rather than making it a part of the realty. This consideration counterbalances, if not outweighs, any presumption of annexation arising from the fact that as owner of the land the accession of the chattel would serve to improve it and enhance its value.
Machinery installed on land for the benefit of an industry located thereon, which, if the industry itself was removed would be of no particular benefit to the naked land, cannot be considered for tax purposes an improvement on land, but personal property. To hold otherwise would mean that the advantages which were supposed to accrue by the amendment of Section 2, Article XII of the Constitution and the amendments of Sections 5386 and 5388, General Code, to a manufacturing taxpayer owning machinery and equipment used in refining and manufacturing, would be lost. Furthermore, if there is any ambiguity in these statutes with reference to the classification of machinery as being-personal property or as improvements on land, such ambiguity must be resolved in favor of the taxpayer. Paris Mountain Water Co. v. Woodside, Treas., 133 S. C., 383, 131 S. E., 37.
This court must accept the facts with reference to *521 tlie relationship of this property to the land upon which it is located, as found by the Board of Tax Appeals, unless such finding is contrary to the manifest weight of the evidence submitted to the board. The finding of the board on the factual issues is stated in its entry as follows:
“ * * * As to all the items involved herein, the evidence is undisputed as to their nature, use to which they are put, and their movability. Nearly all the machinery and equipment are specially designed for the refinery industry and are not adapted for use by any other industry. They were installed solely for the purpose of serving the appellant’s manufacturing enterprise and to furnish the processing necessary for the manufacture of its products and were not installed for the purpose of serving or benefiting the real estate. Some of the items are not even annexed to the real estate in any manner. Every item that is attached is readily removable without injury to itself or to the realty, either as a unit or by disassembling, and some have been moved. Those which, by reason of their size would have to be dismantled, can be reassembled in another place. If the industry moved all of said items would be moved with it.
“The manufacturing business is personal in its nature. The items involved were clearly chattels before they were installed on appellant’s premises. There is no evidence that shows clearly that when they were installed it was intended that they be converted to realty.”
That finding of fact by the commission is supported by the evidence and it becomes the duty of the court to apply the law accordingly. The court does not find that the decision of the Board of Tax Appeals in the respects involved in this appeal was unreasonable or *522 unlawful and in such-respects the decision is, therefore, affirmed.

Decision affirmed in part.

Bell, Turner and Matthias, JJ., concur.
Weygandt, C. J., Zimmerman and Williams, JJ., dissent.