STEINER et al., Appellees,

v.

MINKOWSKI et al., Appellants.

[Cite as *Steiner v. Minkowski* (1991), 72 Ohio App.3d 754.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–077.

Decided March 1, 1991.

*Timothy J. Dever*, for appellees.

*Robert A. Woodley*, for appellants.

MELVIN L. RESNICK, Judge.

This is an appeal from a judgment of the Toledo Municipal Court which, after a trial to the bench, found in favor of plaintiffs-appellees, Richard A. Steiner, Jr. and Maureen E. Steiner, and awarded them $1,375 in back rent allegedly owed by defendants-appellants, Richard Minkowski and Janet Minkowski. Appellees were also awarded ten percent interest on the judgment plus court costs.

Appellants timely appeal that judgment and set forth the following assignments of error:

"The trial court erred in finding that the appellants were properly served with a notice of termination of the written tenancy and of the increase in rent.

"The trial court erred in awarding the increase in rent, for the reason that the increase was unconscionable and unrelated to any damages suffered by the landlord.

"The trial court's decision was contrary to the pleadings and the weight of the evidence."

On May 9, 1989, appellees filed a complaint in forcible entry and detainer alleging that appellants were in unlawful possession of real property owned by appellees. Appellees also claimed that they were owed rental in the amount of $45 per day commencing on April 28, 1989. Appellees demanded restitution of the premises and a judgment in the amount of rent owed, damages, interest, and attorney fees. Attached to the complaint was a copy

of a notice to vacate the premises dated May 4, 1989, and a copy of a notice to increase rent, dated April 12, 1989. The latter document informed appellants that their rent would be increased to $45 per day based upon an "oral lease term and upon landlord's desire." The grounds listed in the notice to vacate included, among others, termination of the oral lease term and failure to leave the premises after a notice of termination was delivered on April 12, 1989.

Appellants filed an answer. A hearing was held on June 16, 1989. As a result of that hearing, appellants were ordered to vacate the premises by midnight on June 24, 1989. Appellants complied with this order on June 21, 1989. The case proceeded to trial, on January 11, 1990, on the issue of rent allegedly owed to appellants by appellees. Testimony and exhibits introduced into evidence at that trial established the following material facts.

Appellees entered into a contract to purchase appellants' residence. Closing on the purchase was held on February 24, 1989. Possession was to be given to appellants thirty days after closing "or neg. [negotiable] with seller." Appellants requested that they be allowed to lease the residence from appellees until such time as they could find a new home. Some testimony was given to the effect that the lease term would be two weeks after date of possession, March 26, 1987. However, the written lease agreement did not include any two-week term. That agreement provides as follows:

"AGREEMENT FEBRUARY 24, 1989

"Richard J. Winkowski and Janet W. Winkowski hereby agree to pay to Richard A. Steiner Jr. and Maureen E. Steiner rent for the use and possession of real property located at 3721 Kershaw, Toledo, Ohio 43613 rent at a rate of TWENTY DOLLARS ($20.00) per day, commencing effective March 27, 1989."

The lease agreement was signed by all of the parties and was witnessed by their respective attorneys.

A notice to leave the premises, dated April 12, 1989, was admitted into evidence. This notice informed appellants that they were to vacate the premises by April 28, 1989 and was based upon the "termination of the oral lease term." The notice to increase rent and the notice to leave the premises, dated May 4, 1989, were also introduced into evidence. Janet Minkowski admitted that she and her husband had received all three notices. She further testified that, pursuant to the written contract, appellants continued to pay $20 per day in rent to appellees after the April 28, 1989 deadline and that appellants refused to enter into any other written agreement subsequently offered to them by appellees.

Richard Steiner and Maureen Steiner both substantiated the fact that appellants refused to enter into a proposed second lease agreement. Both

testified that the rent was increased to $45 per day in order to get appellants out of the home. It is uncontroverted that appellants paid $20 per day in rent for the entire period they remained in the home, to wit: March 27, 1989 to June 21, 1989.

On February 9, 1990, the trial court entered judgment in favor of appellees. The court held that a day-to-day tenancy had been created by the written lease agreement. The court further found that appellees were required to provide a one-day notice for any changes in the lease agreement or for termination of said agreement. Finding that appellants were duly served with a notice to increase the rent, the lower court determined that appellants were liable for the difference between the rent due ($45 per day) and the amount actually paid ($20 per day) for the period commencing on April 28, 1989 and June 21, 1989.

A portion of appellants' first assignment of error, their second assignment of error, and their third assignment of error raise questions related to the sufficiency of the evidence offered at trial. Those arguments shall, therefore, be considered together.

The only other issues to be addressed are found in the first assigned error. In that assignment, appellants assert that appellees' attorney, Kevin J. Kenney, was not designated as an agent of appellees, as mandated by R.C. 5321.18, in the lease agreement. Therefore, they conclude that Kenney had no authority to prepare or deliver the notices of termination, of increase in rent, and to vacate the premises.

R.C. 5321.18(A) and (B) require that the name and address of the owner/landlord of residential rental property and his agent, if any, be provided, in writing, to a tenant of that property. This requirement is included to protect the tenant from claims by a owner/landlord or his agent that notice of the remedies available to a tenant under R.C. 5321.07 and R.C. 5321.08 was not provided to the owner or his agent by the tenant. R.C. 5321.18(C). R.C. 5321.18 has no applicability to notices prepared and delivered by a landlord's attorney in the course of an action in forcible entry and detainer. Therefore, appellants' argument relative to this aspect of their first assigned error is without merit.

Appellants also assert in their first assignment of error that the trial court erred in determining that a day-to-day tenancy existed and that the rent for this tenancy could be unilaterally modified by appellees.

A lease, like any other contract, must be construed to carry out the intent of the parties. *Myers v. East Ohio Gas Co.* (1977), 51 Ohio St.2d 121, 125, 5 O.O.3d 103, 105, 364 N.E.2d 1369, 1372. If there is a written lease

agreement, the intent is determined from a consideration of the written lease as a whole. *J.G. McCrory Ohio Co. v. Rabbitts* (1922), 105 Ohio St. 521, 524–525, 138 N.E. 56, 57.

A periodic tenancy is one where the duration of a lease is for express or implied periods of time, *e.g.*, month-to-month. See, generally, White, Ohio Landlord Tenant Law (2 Ed.1990), Section 3.05. Such tenancies require that an advance notice to terminate be given by either party to the lease. *Id.* Generally, the advance notice is established by a determination of the period of the tenancy. *Id.* For month-to-month and week-to-week tenancies, the notice period is determined by statute. R.C. 5321.17.

In the case before us, a written lease agreement specifies that appellees were to pay $20 per day in rent and includes a commencement day, March 27, 1989. However, the lease does not establish the duration of the lease period, the time and method of payment, or the process to be followed in terminating the lease. The omission of such details created an ambiguity as to the duration of the periodic tenancy. Nonetheless, this term could be implied by the trial court from the circumstances surrounding the tenancy. *Delfino v. Paul Davis Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 289, 31 O.O.2d 557, 561, 209 N.E.2d 194, 199. While duration is *usually* determined by payment of rent, the fact that the agreement expressed a $20 *per day* payment coupled with testimony at trial which disclosed that appellants were to remain in the house only until the time that they could purchase a new residence permitted the trial court to imply that this was a day-to-day tenancy. Therefore, only a one-day notice to terminate was required.

Appellant's first assignment of error, as it relates to the foregoing two issues, is found not well taken.

Appellants' second and third assignments of error and argument one under their first assignment of error challenge the sufficiency of the evidence offered at trial.

Appellants assert that the trial court's judgment was against the manifest weight of the evidence because the notices delivered to appellants and appellees' pleadings all refer to an oral lease agreement rather than a written lease agreement. Appellants claim that appellees did not prove that an oral lease agreement existed and that the notice to increase rent was, therefore, ineffective. They further argue that the notice, by referring to an oral lease agreement, was ineffective to terminate the written lease agreement. Appellants also maintain that the trial court had insufficient evidence before it upon which to base its determination that the lease created a day-to-day tenancy. Finally, they assert that no evidence was introduced to show that they consented to the rent increase or that appellees were damaged by the delay in

acquiring possession of the purchased residence. Therefore, appellants contend that they could not be held liable for the additional $25 per day in rent.

A reviewing court will not reverse a trial court's judgment as being against the manifest weight of the evidence where some competent, credible evidence has been offered on all essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. The trial court's holding is accorded a presumption of correctness.

As to the issue of the notices and the complaint, we note that the trial court's decision rests solely upon the written lease agreement and the notice to increase rent. The two notices to vacate the premises and the complaint were, however, necessary requisites to the institution of a cause of action in forcible entry and detainer. Therefore, the use of the phrase "oral lease term" (not "oral lease" as asserted by appellants) in these documents and its effect, if any, on the procedural validity of this action must be considered.

A three-step process must be followed in order to terminate a landlord/tenant relationship through a forcible entry and detainer action. *Siegler v. Batdorff* (1979), 63 Ohio App.2d 76, 17 O.O.3d 260, 408 N.E.2d 1383, paragraph two of the syllabus. First, the landlord must serve the tenant with a notice to terminate the tenancy. R.C. 5321.17. Second, a timely notice to vacate the premises must be served on the tenant. R.C. 1923.04. Third, the landlord must file a complaint in forcible entry and detainer. R.C. 1923.05; *Siegler, supra.* R.C. 5321.17 and 1923.04 do not require that the lease itself be mentioned in either the notice to terminate or the notice to vacate. R.C. 1923.05 does not mandate that the lease or its terms be included in the complaint. Therefore, the use of "oral lease term" in the notices to appellants and the complaint filed by appellees constituted mere surplusage and did not affect the efficacy of those documents. Moreover, it is clear that appellants were not misled by the use of the term "oral lease term." Janet Minkowski, as well as appellees testified as to their knowledge of the written lease prior to and at the time of the institution of forcible entry and detainer proceedings. Minkowski further testified that she realized that the notices were requesting that appellants leave the premises and/or pay an increased rent. Appellants filed an answer to the original complaint without raising, either in their answer or by motion, this issue. While appellees introduced parol evidence that there was an oral agreement that the term of the lease was to be two weeks, this cause was tried and determined on the written lease agreement. Therefore, competent, credible evidence showed that appellants were properly notified and that the course of the proceedings below was not affected by the use of the language in the notices or complaint. Those portions of appellants'

first and third assignments of error related to the effectiveness and sufficiency of the notices and complaint are found not well taken.

In their second assignment of error, appellants contend that in the event that the notice of termination and notice to increase rent are found properly served and applicable to the written lease agreement, they cannot be held liable for the additional $25 per day increase in rent.

Appellants were duly notified that the tenancy would terminate as of April 28, 1989. After that date, the Minkowskis became holdover tenants or tenants by sufferance. *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.* (1987), 38 Ohio App.3d 79, 81, 526 N.E.2d 321, 323. As holdover tenants, appellees could elect to treat appellants as trespassers or hold them to a new lease term. *Id.* In such cases, the conduct of the parties determines whether an implied contract arises. *Id.* For example, if the tenant holds over and continues paying the same rent, an implied contract arises and is governed by the provisions of the original lease. *Id.* The same result is reached if a tenant remains on the premises and fails to pay the rent. *Spitz v. Nunn* (1930), 34 Ohio App. 397, 171 N.E. 117. Furthermore, the landlord may unilaterally increase the rent for the holdover period. *Moore v. Harter* (1902), 67 Ohio St. 250, 65 N.E. 883. However, the holdover tenant will not be held liable for the difference between the rent stated in the lease and the rent after the increase if the tenant expresses dissent to the increase. *Lane v. Green* (1926), 21 Ohio App. 62, 68, 152 N.E. 790, 792. See, also, *Tuteur v. P & F Enterprises, Inc.* (1970), 21 Ohio App.2d 122, 128, 50 O.O.2d 219, 222, 255 N.E.2d 284, 288; *Vangrow v. Weiss* (1953), 70 Ohio Law Abs. 455, 457, 128 N.E.2d 822, 823; *Fredricks v. Stromberg* (Apr. 2, 1981), Cuyahoga App. No. 42601, unreported. Where the holdover tenant dissents from the increased rental term, and, therefore, does not consent to the tenancy on the new terms, the tenant can be held liable only for either (1) the reasonable value of the use and occupation of the premises, or (2) damages for trespass. *Lane, supra,* 21 Ohio App. at 68, 152 N.E. at 792; *Fredericks, supra.*

In the present case, appellees opted to treat the holdover period as a new periodic day-to-day tenancy, but also unilaterally more than doubled the existing rent. The admitted basis of this increase was coercion, *i.e.,* appellees admitted that there was no reasonable basis for the increase. Appellants dissented from the increased rental rate by remitting the rental named in the original lease and the appellees acknowledged that they received that amount. In addition, appellants declined to consider any additional terms offered by appellees during the holdover period. Under the facts of this case, the rule of *Moore, supra,* is inapplicable. Appellants can be held liable only for fair rental value of the premises and for damages caused by the delay in returning

possession of the premises to the landlord. *Tuteur, supra,* 21 Ohio App.2d at 130, 50 O.O.2d at 224, 255 N.E.2d at 290. The only competent evidence of fair rental value offered in this case was the $20 per day as specified in the written lease agreement. Appellees offered no evidence of damages for delay. Accordingly, the trial court did err in determining that appellees were entitled to the $25 per day difference in rent from April 28, 1989 to June 21, 1989 plus interest. Appellants' second assignment of error is found well taken.

The judgment of the Toledo Municipal Court is affirmed in part and reversed in part. That part of the judgment awarding appellees $1,375 plus ten percent interest is ordered vacated. This cause is remanded to the Toledo Municipal Court for proceedings consistent with that order and assessment of court costs. Court costs of this appeal are to be split equally between the parties.

*Judgment affirmed in part*
*and reversed in part.*

HANDWORK, P.J., and ABOOD, J., concur.